UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BANK OF NEW YORK MELLON, as Trustee for BS ALT A 2005-9,<br>    Plaintiff,<br><br>        v.<br><br>SONJA BELL and<br>JOHNATHAN BELL,<br>    Defendants. | No. 3:11-cv-1255 (JAM) |

**RULING ON PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiff Bank of New York Mellon, having prevailed at trial in its foreclosure action against the defendants Sonja and Johnathan Bell, has moved for an award of fees pursuant to provisions of the mortgage that allow for the collection of fees for services incurred in connection with the borrower's default, and as authorized by section 49-7 of the Connecticut General Statutes. I now grant plaintiff's motion for attorney's fees and costs.

### BACKGROUND

Plaintiff's motion for attorney's fees and costs follows upon more than three years of litigation in this case, culminating in a 5-day bench trial on the foreclosure case in September 2014. After the bench trial, I issued a ruling in plaintiff's favor. *See* Doc. #274. Plaintiff has now filed a motion for attorney's fees and costs (Doc. #265, as updated by Doc. #298), with supporting affidavits and billing statements. Defendants sought the opportunity to cross-examine plaintiff's principal counsel Geoffrey Milne on the reasonableness of those fees. *See Commission on Human Rights and Opportunities v. Sullivan*, 285 Conn. 208, 939 A.2d 541, 561 (2008). I was concerned that defendants would seek to use their opportunity to cross-examine Mr. Milne as a

device to re-argue the merits of their claims and that they would engage in unnecessarily prolonged questioning of Mr. Milne for purposes of bolstering their counterclaim or their litigating position on related matters in Connecticut state court. Accordingly, I granted defendants' request to examine Mr. Milne, subject to the following limitation: "The examination shall be limited to the specific services specified in plaintiff's counsel's affidavit as the basis for an attorney's fees award and shall not be used as a basis to question plaintiff's counsel about other issues in this case. The examination shall be limited to one hour, subject to a request for more time if defendants establish that more time is warranted." Doc. #297.

On February 11, 2015, Attorney Milne testified consistent with his written affidavit, and Mr. Bell had the opportunity to cross-examine him on the basis of extensive billing records submitted as Plaintiff's Post-Trial Exhibit #1. At the conclusion of one-hour of cross-examination by Mr. Bell, I queried him about what additional cross-examination he wished to pursue, and I then extended the time for cross-examination by another 20 minutes.

## DISCUSSION

Under Connecticut statute, "[a]ny agreement contained in a … note … or in any mortgage, to pay costs, expenses or attorneys' fees … in any proceeding for collection of the debt, or in any foreclosure of the mortgage … is valid, but shall be construed as an agreement for fair compensation rather than as a penalty, and the court may determine the amounts to be allowed for those expenses and attorneys' fees, even though the agreement may specify a larger sum." Conn. Gen. Stat. § 49-7. Paragraph 14 of the mortgage in the present case allows fees "for services performed in connection with Borrower's default," expressly including but not limited to attorneys' fees. Similarly, paragraph 7(E) of the promissory note contains a provision for costs and expenses including "reasonable attorneys' fees" in the event of default. A grant of fees and

costs is thus authorized by law and the agreement of the parties, but it is incumbent on this Court to determine the reasonableness of the fee. *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district court retains discretion to determine, under all the circumstances, what constitutes a 'reasonable' fee ….").

Both the Supreme Court and the Second Circuit "have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation omitted). I accordingly must examine the reasonableness of the hourly rates and of the number of hours spent prosecuting the case.

### A. Reasonableness of the Hourly Rates

Prevailing hourly rates in the forum district are presumptively reasonable but the district court need not adhere to them strictly. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 191–93 (2d Cir. 2008). Whether or not the court deviates from "forum" rates, it "should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Id.* at 193.

Plaintiff's counsel's fee arrangement in this matter bills $250 per hour for partners, $200 per hour for associates, and $150 per hour for paralegals. Plaintiff cites cases from this District in which similar or higher rates have been charged and found reasonable, and also submits national and regional survey data on attorney billing rates to the same effect. Defendants have not seriously challenged the reasonableness of the hourly rates. Based on my assessment of the skill and experience of Attorney Milne (whose billings account for the majority of the attorney's fees incurred in this case), my sense was that an hourly rate of $250 was low in comparison to the rates charged by attorneys of less skill and experience. Overall, I find the billing rates to be

3

reasonable, consistent with what reasonable paying clients would pay and appropriate to calculate the presumptively reasonable fee.

### B. Reasonableness of the Hours Spent

The Court must determine the reasonableness of the number of hours for which fees will be awarded. I have accordingly scrutinized the billing records submitted with the plaintiff's motion to ensure that the billed time was not excessive, duplicative, or otherwise unreasonable. I also heard and considered Attorney Milne's testimony about those records on direct and cross examination.

Attorney Milne advised that certain portions of the billing records had been redacted on grounds of privilege and also with respect to entries or matters for which attorney's fees/costs were not being sought. Defendants moved for disclosure of the unredacted records. Doc. #281. I denied the motion for blanket un-redaction of all the billing records, without prejudice to defendants' objection to redaction of specific entries. Parties are generally entitled to assert privilege and redact records in connection with motions for fees but they are not thereby relieved of the burden of proving the reasonableness of the fees. Fee awards based on partially redacted records have been upheld by Connecticut appellate courts. *E.g.*, *Antogiovanni v. America's Homes & Communities Real Estate, LLC*, 130 Conn. App. 286 (2011). Courts in this district have granted awards despite redactions in the records supporting the motion, *e.g.*, *Wells Fargo Bank, NA v. Konover*, 2014 WL 3908596 (D. Conn. 2014), and also reduced fee awards where the records supporting the motion have been "so thoroughly redacted that the Court [can] not reasonably review them." *Home Funding Group, LLC v. Kochmann,* 2008 WL 4298325, at *6 n. 7 (D.Conn. 2008). With respect to several redactions that were the subject of cross-examination,

Mr. Milne testified credibly concerning these entries to substantiate that they reflected services performed in connection with this case.

My own review of the records did not disclose any suspicious billing entries suggesting that the entries were fabricated or that they were misallocated from services performed for another case (or for the parallel litigation between the parties that has been pending in the Connecticut state courts). Overall, I find the billing records and the supporting testimony of Attorney Milne to be trustworthy. I also find that the number of hours devoted by Mr. Milne and his colleagues was at or below a reasonable number for a case of the duration and complexity of this one, especially considering the vast number of filings and defenses asserted by defendants throughout the litigation.

Defendants' principal argument against the motion for attorney's fees is that this entire federal case was unnecessary and resulted only from plaintiff's failed effort to seek foreclosure in the Connecticut state court. I reject this argument. Although plaintiff's prior effort to seek foreclosure in the state court was inconclusive, I cannot conclude that it was done in bad faith or that it was improper for plaintiff to file this federal action. To the contrary, this federal action was necessary largely because of defendants' very aggressive tactics in the prior state court litigation that impeded a timely resolution of the merits.

Defendants also argue that some of the fees were unnecessary because there were instances where plaintiff engaged in late document disclosures (such as to the power-of-attorney form that was Exhibit #132 and other documents associated with witness Paul Savitsky). Relatedly, defendants argue that Attorney Milne's initial demand letter of March 2011 was not a proper letter of default as required under the mortgage agreement. I reject these arguments. To begin with, defendants have not shown how these alleged deficiencies led to higher billings by

Attorney Milne or any of plaintiff's counsel. Litigation is messy business, and absent some grounds to conclude that any of Attorney Milne's deficiencies were the product of bad faith or gross negligence that causally led to inflated billing, I see no grounds to reduce that award of attorney's fees as some form of penalty having nothing to do with the reasonable of fees.

At the hearing on the motion for fees, Mr. Bell also cross-examined Mr. Milne about a $30 entry reflecting a paralegal's preparation and execution of an electronic filing and mailing of a courtesy hard-copy to defendants. Defendants contend that fees should be reduced where the billing records indicate time spent mailing filings to the defendants, because the defendants received those filings through the electronic filing system and the mailings were therefore duplicative and wasteful. There is no indication that the defendants ever objected to those mailings or requested that they be discontinued, and it is a common professional courtesy to send them. I therefore find that the practice was not unreasonable and should not result in a reduction of fees. The fact that Mr. Bell devoted a significant portion of his cross-examination time to this quite *de minimis* issue is indicative of the lack of genuine objections to or concerns about the integrity of the billing records in this case.

As a "surprise" exhibit during the cross-examination of Attorney Milne, Mr. Bell produced a letter from the loan servicer in this case (Defendants' Post-Trial Exhibit #1) reflecting a recent refund in January 2015 to Mrs. Bell of $5,907.53, corresponding to monies (with interest) paid by the Bells in September 2007 when they were seeking a loan modification following their prior months of non-payment. The letter states in relevant part: "While you were previously seeking a loan modification, you made a payment of $4649 that was received on 9/24/2007. Wells Fargo had communicated that if a modification could not be achieved, we would refund that payment." Attorney Milne testified that he was unaware of this letter until

shown it in court and that it is not unusual for client financial institutions to have correspondence with customers that are not copied to the client's attorneys. While I find it odd that the loan servicer would refund any money at all to the Bells in light of their many years of non-payment, nothing in the letter remotely indicates misconduct by plaintiff's trial counsel, much less does the letter cast any doubt on the basis for my prior findings of fact and conclusions of law.

### C. Presumptively Reasonable Fee

Combining the data submitted with plaintiff's motion (doc. # 265) with data submitted with plaintiff's notice of updated calculation reflecting fees and costs incurred after the motion (doc. # 298)—all of which I find to be reasonable—the presumptively reasonable fee calculation is as follows:

| Staff | Rate | Hours | Total |
| --- | --- | --- | --- |
| Partner | $250 | 463.42 | $115,855 |
| Partner (1/2 rate) | $125 | 4.5 | $562.50 |
| Associate | $200 | 48.34 | $9,668 |
| Associate (1/2 rate) | $100 | 4.5 | $450 |
| Paralegal | $150 | 281.85 | $42,277.50 |
| Total: | | | $168,813 |

That sum—the "lodestar" of multiplying the reasonable rate by the reasonable hours—is the presumptively reasonable fee. I find no reason to adjust it. Combining again the data from the motion and the update, total costs are $10,971.56. The total fees and costs together are $179,784.56, and in light of all the circumstances, I find that amount to be reasonable.

## CONCLUSION

For all of the reasons discussed above, plaintiff's Motion for Attorney's Fees and Costs (doc. # 265) is granted in the amount of $179,784.56.

So ordered.

Dated at Bridgeport, Connecticut, this 24th day of February 2015.

                                                  /s/ _____
                                                  Jeffrey Alker Meyer
                                                  United States District Judge